UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| RUSTY CARIBBEAN PROPERTY LIMITED, derivatively, on behalf of RESORT RESIDENCES AT VICEROY ANGUILLA, LTD. and VILLAS AT ANGUILLA HOMEOWNERS ASSOCIATION, LTD., | : : : : | Index No. 16-cv-3094 |
| | : | |
| Plaintiffs, | : | |
| v. | : | **COMPLAINT AND JURY DEMAND** |
| SOF 82 ANGUILLA HOLDINGS, LLC, SOF—VIII—HOTEL II ANGUILLA HOLDINGS, LLC, STARWOOD CAPITAL GROUP, LLC, and ROY SHANHOLTZ, | : : : | |
| Defendants, | : | |
| RESORT RESIDENCES AT VICEROY ANGUILLA, LTD. and VILLAS AT ANGUILLA HOMEOWNERS ASSOCIATION LTD., | : : | |
| Nominal Parties. | : | |

-------------------------------------------------------------x

## NATURE OF THIS ACTION

1.    In or about April 2012, Rusty Caribbean Property Ltd. ("RCP") agreed to purchase condominium unit number K103 ("Condo K103") and Villa Number 17 (the "Villa 17") within the Viceroy Anguilla Resort and Residences ("Viceroy Anguilla") from the sponsor of the offerings, Defendant SOF 82 Anguilla Holdings, LLC ("SOF 82" or "Sponsor")[1], for the use and enjoyment of Plaintiff's principal and his family for a combined sales price of over $6,000,000.

---

[1]Upon information and belief, Defendant, SOF 82 is a wholly owned subsidiary of Defendant, SOF--VIII--Hotel II Anguilla Holdings, LLC ("SOF VIII").

2.      With such a price tag, RCP and its principal, Robert Shamis, expected that Viceroy Anguilla would exemplify the zenith of world class hotel luxury in permanent residences.  In fact, in marketing materials reviewed by Plaintiff prior to purchasing Condo K103 and Villa 17, Defendant Starwood Capital Group LLC ("Starwood")[2], through its chief executive officer, Barry Sternlicht, boasted that the Viceroy Anguilla is "the finest of all Caribbean resorts" with "[e]very amenity imaginable at the guests' fingertips."  According to Starwood's representations in the marketing materials presented to and relied upon by Plaintiff, "[i]ndependent and certified appraisers representing mortgage lenders have characterized Viceroy Anguilla as the most magnificent development they have ever evaluated at anytime, anywhere in the Caribbean."

3.      The Starwood Defendants have abandoned their obligations to provide a five star resort property, amenities and services at the Viceroy Anguilla.  The Starwood Defendants have failed to provide the level of service and property maintenance that are consistent with representations and obligations made by Sponsor in two separate offering plans filed with the New York State Department of Law; marketing materials that were used to solicit purchasers in New York; and agreements made between the Starwood Defendants and various third parties for the benefit of Plaintiffs, Resort Residences at Viceroy Anguilla, Ltd. (hereinafter, the "Condo Association") and Villas at Anguilla Homeowners Association, Ltd. (hereinafter, the "Villas Association").

4.      Upon information and belief, in addition to the above breaches, the Starwood Defendants, in their position as Sponsor, owner, affiliate and/or principal of the Viceroy Anguilla, used their complete control over the Condo Association and Villas Association to cut operational, maintenance, management and service related expenses, which have caused a drastic deterioration

---

[2] Upon information and belief, Defendant Starwood is affiliated and/or owner of Defendants SOF VIII and SOF 82 (collectively, the "Starwood Defendants").

of the shared used facilities located within the Viceroy Anguilla and adversely impacting the resale value of the condominiums and villas, including, Condo K103 and Villas 17.

5.        Concurrently, the Starwood Defendants have wrongfully denied RCP's request, as a member of the Condo Association and Villas Association, to review the records that are necessary to determine the correctness and/or legitimacy of the various assessments charged to the members of the Condo Association and Villas Association that are not affiliated with the Starwood Defendants.

6.        Plaintiffs, therefore, cannot determine if the Starwood Defendants, as majority owners of the unsold residential condominium units and villas at the Viceroy Anguilla, have contributed their *pro rata* share of various and exorbitant assessments, expenses and other costs that the Starwood Defendants are obligated to contribute pursuant to the terms of the offering plans filed in New York.

7.        Upon information and belief, as a result of the ongoing wrongful conduct of the Defendants, RCP, individually, and Plaintiffs, derivatively, have incurred excessive assessments and fees and face staggering future assessments and fees that were not and will not be necessary had Defendants not breached their obligations set forth in the offering plans.

8.        By this action, Plaintiffs seek to recover damages arising out of, and relating to Defendants' failure to provide the contractually required level of service and maintenance; Defendants' waste and mismanagement; Defendants' breach of fiduciary duties owed to Plaintiffs; and an accounting to determine whether Plaintiffs were wrongfully assessed and/or whether the Starwood Defendants made their *pro rata* payments pursuant to the various assessments charged to the members of the Condo Association and Villas Association.

## THE PARTIES

9.      RCP is a company incorporated in Anguilla, British Virgin Islands under the Companies Act in February 2012, with a Registered Office at C.R. Hodge & Associates, Suite 100, The Haskins Building, P.O. Box 1486, The Valley, Anguilla. RCP is solely owned by Robert Shamis. In or about April 2012, RCP purchased from Sponsor, Condo K103 and the Villa 17, both located at the Viceroy Anguilla.

10.     Upon information and belief, derivative Plaintiff and nominal defendant, Condo Association, is a non-profit company incorporated under the Anguilla Companies Act. The Condo Association purportedly administers and manages the residential and commercial condominium units and certain common areas, amenities and utilities at the Viceroy Anguilla. RCP, as owner of Condo K103, is a member of the Condo Association. The affairs of the Condo Association are governed by the board of the Condo Association (the "Condo Board."). The Condo Board consists of three people each with one vote. The Condo Board President is Defendant Roy Shanholtz who is simultaneously a principal of the Starwood Defendants and Condo Board member Evan Schwimmer who is simultaneously an affiliate of the Starwood Defendants.

11.     Upon information and belief, derivative Plaintiff and nominal defendant, Villas Association is a non-profit company incorporated under the Anguilla Companies Act. The Villa Association purportedly administers and manages certain residential single family lots located within the Viceroy Anguilla. The affairs of the Villa Association are governed by the board of the Villa Association (the "Villa Board."). RCP as owner of Villa 17 is a member of the Villa Association. The Villa Board consists of three people each with one vote. Roy Shanholtz is also the President of the Villa Board and Evan Schwimmer is also a member of the Villa Board.

4

12.     Upon information and belief, Defendant SOF 82[3] is a Delaware limited liability company with an address of 591 West Putnam Avenue, Greenwich, Connecticut.

13.     Upon information and belief, Defendant SOF VIII, is a Delaware limited liability company with an address of 591 West Putnam Avenue, Greenwich, Connecticut, and wholly owns SOF 82.

14.     Upon information and belief, Defendant, Starwood Capital Group, L.L.C. ("Starwood") is an owner and/or affiliate of SOF 82 and SOF VIII.  Starwood is a real estate private equity firm that develops five star luxury hospitality projects in the United States and abroad.  In the marketing materials provided to and relied upon by Plaintiff prior to the purchase of the Condo and Villa, Starwood touted itself as the owner and sponsor of the Viceroy Anguilla.  In Condo Offering Plan and the Villas Offering Plan filed with the New York State Attorney General, Starwood is identified as an affiliate of Sponsor.

15.     Upon information and belief, Defendant, Roy Shanholtz is the principal of SOF 82 and SOF VIII; the vice-president of asset management and hotel operations for Starwood; and President of the Condo Association and the Villa Association.

16.     As set forth in more detail below, upon information and belief, SOF 82, SOF VIII and Starwood are alter-egos of one another, that share, among other things: common office space and address; an overlap in officers, directors and/or personnel; and an intermingling of funds; it is through this domination that the Starwood Defendants have wrongfully injured Plaintiff.

---

[3] Upon information and belief, "SOF" refers to Starwood Opportunity Fund.  Starwood's website identifies various Starwood funds using the "SOF" designation: (i) Starwood Global Opportunity Fund X (SOF X); (ii) Starwood Distressed Opportunity Fund IX (SOF IX); (iii) Starwood Global Opportunity Fund VIII (SOF VIII); (iv) Starwood Global Opportunity Fund VII (SOF VII); (v) Starwood Global Opportunity Fund VI (SOF VI); (vi) Starwood Global Opportunity Fund V (SOF V); (vii) Starwood Opportunity Fund IV (SOF IV); (viii) Starwood Opportunity Fund II (SOF II);  and (ix) Starwood Opportunity Funds I and IA (SOF I).  See www.starwoodcapital.com/funds/.

## JURISDICTION AND VENUE

17.    This Court has personal jurisdiction over Defendants because they do business in the State of New York and Defendants' actions that are the subject of the Complaint took place, in significant part, in New York.

18.    Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a) (1), (2) and/or (3).

19.    Venue is proper in this District because Defendants do business in New York and Defendants' actions that are the subject of this Complaint took place, in significant part, within this District.

## FACTS COMMON TO ALL CLAIMS

### A.    The Property

20.    The Viceroy Anguilla is located on approximately 34.75 acres of land at Barnes Bay, West End, Anguilla, British West Indies.  The Viceroy Anguilla includes residential, hotel and commercial use areas.

21.    Upon information and belief, the Viceroy Anguilla was previously owned by the Barnes Bay Development, Ltd. ("BBDL"), which submitted an offering plan to the New York Department of Law on or about December 16, 2005.  The hotel began operations in December 2009.  On March 17, 2011, BBDL filed petitions for bankruptcy under Chapter 11 before the United States Bankruptcy Court in Delaware.

22.    Upon information and belief, pursuant to an auction and sale of substantially all of the assets of the BBDL, the Starwood Defendants acquired the property on July 27, 2011 and title to the property was transferred to the Starwood Defendants on September 22, 2011.

23.    Upon information and belief, within the Viceroy Anguilla are (a) parcels of land dedicated to hotel and resort amenities and operations; (b) the Condominium known as the "Resort

6

Residences at Viceroy Anguilla," comprised of one hundred and three (103) units that were offered for purchase, thirty-two (32) Residential Units dedicated for use in hotel operations, ten (10) commercial units (used for restaurant, lounge, spa and retail space), seven (7) hotel units and various common area; and (c) a Home Owners Association containing thirty-one (31) residential villas, which are single family lots.

24.    Upon information and belief, the Starwood Defendants purchased the Viceroy Anguilla with the intention of selling the property within a five year period, essentially, to "flip the property." To date, the Starwood Defendants' efforts to sell or "flip" the Viceroy Anguilla have been unsuccessful.

25.    Similarly, the Starwood Defendants' efforts to sell the individual condominium units and villas located at the Viceroy Anguilla have, by any measure, been unsuccessful. Upon information and belief, as of July 2015, eighty-four (84) of the one hundred and three (103) residential condominium units were unsold[4] and twenty-five (25) of the thirty-one (31) villas were unsold.

B.    **The Project Offering**

(i)    **The Sales Materials**

26.    Upon information and belief, in or about January 2012, the Starwood Defendants began marketing efforts in New York that focused on soliciting potential purchasers of the condominium units and villas at the Viceroy Anguilla. In their marketing and sales materials, the Starwood Defendants represented the Viceroy Anguilla "as the finest of all Caribbean resorts," and that the condominiums and villas at the Viceroy Anguilla were in their "final sales release,"

---

[4] Of the nineteen condo units sold, upon information and belief, six were sold prior to the Starwood Defendants' purchase of the Viceroy Anguilla in 2011.

an indication to the prospective purchasers that this was the last time that the properties would be available for purchase.[5]

27.    The Starwood Defendants' sales materials further represented that, "[t]he stunning architecture and effortless design are set against the backdrop of one of the world's most pristine white beaches….Every amenity imaginable is at the guests' fingertips."

28.    The Starwood Defendants' promotional materials for the Viceroy Anguilla also specifically touted the experience and direct involvement of Barry Sternlicht, Chairmen and Chief Executive Officer of Starwood.  Promotional materials for the Viceroy Anguilla contained the following quote by Mr. Sternlicht:

> In my career, I've been privileged to visit many of the world's most exquisite hotels.  In doing so, I've had the opportunity to carefully consider exactly what is the formula that makes landmark properties truly exceptional.  These destinations must combine distinctive design and superb amenities with uncompromising service.  However, only the best of the best take on a very special sense of spirit and place that becomes so instilled in the soul of the visitor that they yearn to return again and again.  It is from this perspective that I recommend Viceroy Anguilla to you as the finest of all Caribbean resorts.
>
> Starwood Capital Group
> Viceroy Anguilla is owned by an affiliate of Starwood Capital Group, a privately held, U.S.-based investment firm with a core focus on global real estate.  Since the group's inception in 1991, the firm, through its various funds, has completed over 400 transactions representing assets of $28 billion.  Starwood Capital currently has approximately $18 billion of assets under management, and controls entities that include more than 1,000 hotels valued at more than $7.6 billion.

---

[5] In early 2012, the condominium units and villas located at the Viceroy Anguilla were not in their "final sales release." In fact, to date, a large majority of the condominium units and villas offered for sale have not been purchased and are still being offered for sale in New York and throughout the United States.

29.    The Starwood Defendants' sales materials also represented that "[i]ndependent and certified appraisers representing mortgage lenders have characterized Viceroy Anguilla as 'the most magnificent development they have ever evaluated at anytime, anywhere in the Caribbean."

(ii)    **The Offering Documents**

(a).    **The Condo Offering Plan**

30.    On January 18, 2012, the condominium offering plan for Resort Residences at Viceroy Anguilla (the "Condo Offering Plan") was accepted for filing by the New York State Department of Law. The law firm Dewey & LeBeoeuf, LLP, which is now in bankruptcy and was previously located at 1301 Avenue of the Americas, New York, N.Y. 10019, represented Sponsor in the transactions proposed in Condo Offering Plan.[6]

31.    The Condo Offering Plan offered one hundred and three (103) residential condominium units; an additional thirty-two (32) residential condominium units to be dedicated for use in hotel operations, ten (10) commercial units and seven (7) hotel units, were not offered for sale.

32.    The Condo Offering Plan is to be read as an integrated document that includes, but is not limited to, the offering document, which sets forth the rights and obligations of the Sponsor, the proposed purchase agreement (the "Proposed Purchase Agreement[7]"), third party contracts and summaries of various third party agreements concerning the management and operation of the Viceroy Anguilla.

33.    The Condo Offering Plan sets forth the obligations of the Sponsor:

---

[6] In 2015, the Starwood Defendants submitted the First Amendment to the Condominium Offering Plan Resort Residences at Viceroy Anguilla (the "Amended Condo Offering Plan".) Upon information and belief, the law firm Holland & Knight LLP, 31 West 52nd Street, New York, N.Y. 10019, represents Sponsor with respect to the transactions proposed in the Amended Condo Offering Plan.
[7] The proposed purchase and sales agreement included as part of the Condo Offering Plan contains a New York forum and choice of law provision.

Sponsor shall defend any suits or proceedings arising out of Sponsor's acts or omissions and shall indemnify the Condominium Association Board and the Residential Unit Owners for the same. All representations under this Offering Plan, all obligations pursuant the General Business Law, and such additional obligations under this Offering Plan which are to be performed subsequent to the closing date of a Unit will survive delivery of the deed.

Sponsor agrees to pay all common charges, special assessments and real estate taxes with respect to the unsold units. Sponsor has the financial resources to meet its obligations with respect to the unsold Units. No bond has been furnished to secure Sponsor's obligations to pay Common Expenses, Special Assessments or real estate taxes with respect to unsold units or to perform its obligations under the Plan.

(Emphasis added).

34.     Upon information and belief, as of July 1, 2015, Sponsor owned eighty-four (84) unsold units, and pursuant to the Condo Offering Plan, Sponsor will not relinquish control over the Condo Board until fifty-two (52) out of the one hundred and three (103) condominiums are sold by the Sponsor.

35.     Under the Section entitled: "Rights and Obligations of Unit Owners and the Condominium Association Board," the Condo Offering Plan provides that, "The [Condo Association] is responsible for the care and maintenance of the Condominium. The Association shall also be responsible for maintaining any Improvements in accordance with the Hotel Standard that seventy-five percent (75%) of the Voting Power of the Condominium Association designates for maintenance by the Condominium Association."

36.     Upon information and belief, Sponsor controls more than eighty percent (80%) of the Voting Power of the Condominium Association, and as such, has total control and responsibility over maintaining the "Hotel Standard", which is defined in paragraph 42 below.

**(b).    The Villa Offering Plan**

37.    Upon information and belief, on January 25, 2012, the Homeowner's Association

Offering Plan Villas at Anguilla Homeowner's Association Ltd. (the "Villa Offering Plan") was

accepted for filing by the New York State Department of Law.    Dewey & LeBeoeuf, LLP, also

represented Sponsor in the transactions proposed in the Villas Offering Plan.[8]    Defendant SOF 82

is identified as the Sponsor of the Villa Offering Plan.

38.    The Villa Offering Plan offered thirty-one (31) residential villas, which are single-

family lots.

39.    The Villa Offering Plan is to be read as an integrated document that includes, but

is not limited to, the offering document, which sets forth the rights and obligations of the Sponsor,

the Proposed Purchase Agreement[9], the By Laws of the Villas at Anguilla Homeowner's

Association, Ltd., third party contracts and summaries of various agreements concerning the

management and operation of the Viceroy Anguilla.

40.    The Villa Offering Plan sets forth the obligations of the Sponsor, pursuant to the

New York General Business Law:

> Sponsor shall defend any suits or proceedings arising out of
> Sponsor's acts or omissions and shall indemnify the Villas
> Association Board and the Villas Owners for the same. <u>All
> representations under this Offering Plan, all obligations pursuant the
> General Business Law, and such additional obligations under this
> Offering Plan which are to be performed subsequent to the closing
> date of a Unit will survive delivery of the deed.</u>
>
> As long as Sponsor has unsold Villas which are offered for sale
> pursuant to this Plan, Sponsor shall amend the Plan whenever there

---

[8] In 2015, the Starwood Defendants submitted the First Amendment to the Condominium Offering Plan Resort
Residences at Viceroy Anguilla (the "Amended Condo Offering Plan".)  Upon information and belief, Holland &
Knight LLP, 31 West 52nd Street, New York, N.Y. 10019 represents Sponsor with respect to the transactions
proposed in the Amended Condo Offering Plan.
[9] The proposed purchase and sales agreement included as part of the Villas Offering Plan contains a New York
forum and choice of law provision.

is a change in the budget or when one (1) year has passed since the
budget was last updated.

(Emphasis added.)

41.     Upon information and belief, as of July 1, 2015, Sponsor owned twenty-five (25)

unsold villas; Sponsor will not relinquish control over the Villa Association Board until in excess

of fifty-one percent (51%) of the thirty-one (31) villas are sold.

**The "Hotel Standard"**

42.     In the Condo Offering Plan and the Villa Offering Plan, the Sponsor represented

that the Viceroy Anguilla would be maintained at the "Hotel Standard." In the Master Declaration,

which is included in both offering plans, Sponsor defined the "Hotel Standard" as:

> The term "Hotel Standard" means the highest of the following
> luxury standards for the operation and maintenance of, and service
> levels for, the Condominium Project and the Master Development:
> (1) the standard required to maintain and operate the Condominium
> Project and the Master Development in a condition and quality level
> no less than that existed at the time that the Master Development
> and Condominium Project were initially completed (ordinary wear
> and tear excepted); (2) the standard of excellence comparable to
> those maintained in other resort hotels owned by the Declarant or
> affiliates of the Declarant in the Caribbean or in other tropical island
> or coastal locations; or (3) the standard required (if any) under any
> franchise or license agreement entered into by the Declarant and a
> third party franchisor or licensor of a hotel or other hospitality brand.

43.     The Condominium Management Agreement between Defendant, Viceroy Hotel

Anguilla Ltd. and Defendant, Resort Residences at Anguilla Homeowners Association Ltd.,[10]

contained in the Condo Offering Plan, reiterates the Hotel Standard.

---

[10] As set forth in paragraphs 49-56 below, the Condo Board and Villas Board are dominated and controlled by the
Starwood Defendants, via their principal, Defendant Shanholtz.

44.    The Offering Plans also contains a summary of a memorandum of understanding between the Government of Anguilla and Defendant, SOF VIII, whereby SOF VIII "convenanted to maintain the [Viceroy Anguilla] as not less than a 4 ½ star tourist facility...."

45.    Upon information and belief, after the Condo Offering Plan and the Villa Offering Plan were filed with the New York Department of Law in January 2012 and Plaintiff purchased Condo K103 and Villa 17 in April 2012, the Starwood Defendants implemented a policy to reduce their expenditures relating to Viceroy Anguilla's operating expenses. As a direct result of Starwood Defendants' decision to reduce capital expenditures related to property maintenance, amenities and staffing, the quality of the grounds and service at Viceroy Anguilla have degraded far below the required Hotel Standard and/or four and a half (4 ½) star level.

46.    For example, upon information and belief, from 2012 through 2015, Sponsor's budgetary expenditures on employee wages related to repairs and maintenance at the Viceroy Anguilla were reduced by more than twenty-one percent (21%).

47.    Upon information and belief, Sponsor's reduction in budgetary expenditures related to, *inter alia,* repairs and maintenance has resulted in the degradation of the common areas within the shared property areas of the Viceroy Anguilla. Examples of the degradation in the Viceroy Anguilla common areas, include, but are not limited to: an overpowering stench of raw sewage emanating from irrigation sprinklers throughout the Viceroy Anguilla, including the greeting area for guests and visitors; collapsed drainage gates on the property, which create tripping hazards for guests; cracked and otherwise damaged flooring; damaged staircases; damaged and broken furniture; damaged electrical boxes and outlets; damaged broken and/or missing light fixtures; water damage and rust throughout the common areas; broken and/or poorly repaired glass fixtures; significant erosion of the beaches; and garbage strewn beaches.

48.     The Starwood Defendants have let the Viceroy Anguilla fall far below the requisite

Hotel Standard in violation of their obligations set forth in the Condo Offering Plan and Villas

Offering Plan.  The current shared facilities properties at the Viceroy Anguilla are far from "the

finest of all Caribbean resorts" or "the most magnificent development … ever evaluated at

anytime, anywhere in the Caribbean."

**The Sponsor-Controlled The Condo Board Management**

49.     Included within the Condo Offering Plan are the By-Laws of Resort Residences at

Anguilla Homeowners Association Ltd (the "Condo By-Laws").  Section 2.4 of the Condo By-

Laws sets forth the classes of membership of the Condo Association.  Each owner of a unit within

the condominium project is considered a "Class A Member."  Upon information and belief, the

"Class B Member" is SOF VIII as the owner of the Viceroy Anguilla.  The "Class C Member" is

the Sponsor "as the holder of the majority of the total voting power of the Condo Association."

The Class C Member shall cease and be converted to a Class A member upon the Sponsor holding

less than fifty-one percent (51%) of the total voting power of the Condo Association.

50.     Upon information and belief, as of July 1, 2015, Sponsor owned eighty-four (84)

unsold units as only nineteen (19) condominium units have been sold by Sponsor.  Therefore, there

has been no conversion of the Class C Member to a Class A Member of the Condo Association.

51.     Upon information and belief, on February 26, 2013, the Sponsor appointed the

members of the Condo Board, and as of July 2015, the members of the Condo Board are Defendant,

Shanholtz, Evan Schwimmer and Fiorella Boscia.

52.     Upon information and belief, Defendant Shanholtz is also a principal of SOF 82

and SOF VIII and vice-president of asset management and hotel operations for Starwood.  Evan

Schwimmer is an affiliate of the Starwood Defendants.  The Starwood Defendants, through

14

Shanholtz, have at all relevant times dominated and controlled the Condo Association and the Condo Board to the detriment of the individual members of the Condo Association.

**The Sponsor-Controlled The Villa Board Management**

53.    Included within the Villa Offering Plan is By-Laws of Villas at Anguilla Homeowners Association Ltd. (the "Villa By-Laws"). Section 2.4 of the Villa By-Laws sets forth the classes of membership of the Villas Association. Each owner of a villa within the Viceroy Anguilla project is considered a "Class A Member." Upon information and belief, the "Class B Member" is SOF VIII as the owner of the Viceroy Anguilla. The "Class C Member" is the Sponsor "as the holder of the majority of the total Voting Power of the Villas Association. The Class C Member shall cease and be converted to a Class A member upon the Sponsor holding less than fifty-one percent (51%) of the total voting power of the Villas Association."

54.    Upon information and belief, as of July 1, 2015, Sponsor owned twenty-five (25) unsold villas as only six (6) villas have been sold by Sponsor. Therefore, there has been no conversion of the Class C Member to a Class A Member of the Villas Association.

55.    Upon information and belief, on February 26, 2013, the Starwood Defendants appointed the members of the Villas Board, and as of July 2015, the members of the Villas Board are Defendant, Roy Shanholtz, Evan Schwimmer and Adam Zoia.

56.    Upon information and belief, Defendant Roy Shanholtz is also a principal of SOF 82 and SOF VIII and vice-president of asset management and hotel operations for Starwood. Evan Schwimmer is an affiliate of the SOF 82. The Starwood Defendants at all relevant times have dominated and controlled, via Shanholtz, the Villas Association and the Villas Board to the detriment of the individual members of the Villas Association.

15

**The Assessments**

57.     The owners of all condos and villas at the Viceroy Anguilla are required to pay,
directly to the Starwood Defendants, assessments at various times throughout the year.  There are
various forms of assessments incurred by the condo and villa owners for allegedly different
purposes related to the management and operation of the Viceroy Anguilla.

58.     Upon information and belief, the Condo Offering Plan and the Villa Offering Plan
provide that the costs incurred in connection with the management, operation, maintenance and
repair of the Resort will be shared among the Condo Association members, the Villas Association
members and the Hotel Owner (*i.e.* SOF VIII).

59.     The Master Assessment is one type of assessment.  Upon information and belief,
the Master Assessment is set by the Starwood Defendants, on an annual basis, based upon the
estimated "Shared Facility Expenses"[11] set forth in the Master Budget for that year.

60.     The Condo Offering Plan and the Villa Offering Plan represented that the Master
Budget must be in compliance with 13 N.Y.C.R.R. 20.4(d) for as long as the Starwood Defendants
control the Condo Association and Villas Association.  To date, the Starwood Defendants still
control the Condo Association and Villas Association, and upon information and belief, the Master
Budget for the Viceroy Anguilla is both prepared and approved by the Starwood Defendants.

61.     Upon information and belief, the Starwood Defendants also control how the Master
Assessment is apportioned to each condo and villa owner and ownership groups at the Viceroy
Anguilla.  For example, the Starwood Defendants allegedly allocate certain yearly costs to all of
owners of condominium units and villas at the Viceroy Anguilla while also allocating certain costs

---

[11] Upon information and belief, the Shared Facility Expenses means the estimated aggregate amount of expenses, as
set forth in the Master Budget, to be incurred by the Sponsor during the fiscal year with respect to maintenance,
repair, operation, and management of the Shared Facilities Property and Shared Facility Use Areas.

among one or more groups of owners at the Viceroy Anguilla (*i.e.,* the residential condo owners, the villa owners and the commercial unit owners).

62.    Upon information and belief, the Starwood Defendants prepare the Master Assessment Schedule that sets forth what every condominium unit owner and villa owner will pay towards the Master Assessment, pursuant to a proportional interest charge, which is allegedly based on the square footage of each condo unit or villa.   Pursuant to the Condo Offering Plan, the Villas Offering Plan and the Master Declaration, Sponsor is obligated to pay assessments equal to its proportional interest charge as the owner of the unsold condos, unsold villas and owner of commercial units located at the Viceroy Anguilla.

63.    Upon information and belief, the Master Assessment Schedule is then reviewed and approved by the Condo Association Board and Villa Association Board, both of which are completely controlled and dominated by Defendant, Shanholtz, on behalf of the Starwood Defendants.

64.    The assessment charges are substantial.  For example, in 2015 April, RCP paid master assessments for Condo K103 that totaled over $77,000 and for Villa 17 that totaled over $140,000.  In 2016, RCP is projected to pay over $76,000 for master assessments for Condo K103 and $139,000 master assessment for Villa 17.

65.    RCP pays the assessments and expenses incurred in connection with Condo K103 and Villa 17 directly to Defendant SOF 82's bank account at CITI Private Bank, N.A., located at 153 East 53rd Street, New York, N.Y. 10043.

66.    In or about February 2016, RCP as a member of the Condo Association and the Villas Association requested that Defendant Shanholtz, president of the Condo Board and Villas

Board provide the underlying documentation supporting the expenses that were paid pursuant to the various assessments.  RCP's requests, to date, have been ignored.

## PLAINTIFFS' FIRST CAUSE OF ACTION AGAINST STARWOOD DEFENDANTS FOR BREACH OF CONTRACT

67.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 66 as if fully set forth herein.

68.     The Condo Offering Plan and Villa Offering Plan are, respectively, valid and enforceable contracts entered into by the Starwood Defendants.

69.     The Condo Offering Plan and Villas Offering Plan contain representations that require the Starwood Defendants to maintain the Viceroy Anguilla at the defined "Hotel Standard."

70.     Plaintiffs, derivatively, are third party beneficiaries to the Condo Offering Plan and the Villas Offering Plan.

71.      The Starwood Defendants have breached their obligations set forth in the Offering Plans by failing to maintain the Viceroy Anguilla at the defined "Hotel Standard" and/or at the minimum level of a four and a half (4.5) star hotel.

72.     The Starwood Defendants have an obligation under the Condo Offering Plan and Villas Offering Plan to maintain the Viceroy Anguilla in the same manner and condition as of the date the respective offering plans were filed, until the Sponsor no longer controls the Condo Association and the Villa Association.  The Starwood Defendants, while in control over said associations, are fully aware of the deteriorating and decaying common areas, services and amenities at the Viceroy Anguilla, and have failed to take the steps necessary to remedy and prevent these failures.

73.     Any demand made by RCP upon either the Condo Association and/or Condo Board to commence an action against the Starwood Defendants and/or Defendant Shanholtz would have

been futile because the Starwood Defendants represent approximately eighty percent (80%) of the members of the Condo Association by virtue of owning eighty-four (84) of the one hundred and three (103) condominium units. As such, Starwood Defendants through their officer and affiliate control a majority of the three member Condo Board.

74.    Any demand made by RCP upon either the Villa Association and/or Villa Board to commence an action against the Starwood Defendants and/or Defendant Shanholtz would have been futile because the Starwood Defendants represent, approximately, eighty percent (80%) of the members of the Villa Association on account of owning twenty-five (25) of the thirty-one (31) residential villas. As such, Starwood Defendants through their officer and affiliate control a majority of the three member Villa Board.

75.    As a result of the foregoing, the Starwood Defendants are liable to the Plaintiffs, derivatively, in an amount to be determined at trial.

## PLAINTIFFS' SECOND CAUSE OF ACTION AGAINST STARWOOD DEFENDANTS FOR WASTE AND MISMANAGMENT

76.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 75 as if fully set forth herein.

77.    The individual non-Starwood affiliated members of the Condo Association and Villas Association pay Starwood Defendants assessments for the repairs and maintenance of the Shared Facilities Property located within the Viceroy Anguilla.

78.    Upon information and belief, the individual members of the Condo Association and Villa Association pay, in whole or part, the assessments directly to Starwood Defendants' New York bank account(s).

79.     Upon information and belief, Starwood Defendants pursue a course of conduct of waste and mismanagement of the assessment proceeds that results in the Starwood Defendants failure to comply with their obligations to maintain the "Hotel Standard."

80.     As a result of the foregoing, the Starwood Defendants are liable to the Plaintiffs, derivatively, in an amount to be determined at trial.

## PLAINTIFFS' THIRD CAUSE OF ACTION AGAINST
## STARWOOD DEFENDANTS FOR ACCOUNTING

81.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 80 as if fully set forth herein.

82.     Defendant Shanholtz is President of the Condo Association and Villa Association; principal of SOF VII and SOF 82; and vice-president of asset management and hotel operations for Starwood.  Defendant Shanholtz, on behalf of The Starwood Defendants, prepares, reviews and approves the Master Development Budget of the Viceroy Anguilla.  Defendant Shanholtz, in his capacity as principal of The Starwood Defendants and President of the Condo Association and Villa Association prepares, reviews and approves the Master Assessment Schedule, which is based off of the approved Master Development Budget.

83.     Defendant Shanholtz as President of Condo Association and Villa Association owes a fiduciary duty to the members of Condo Association and Villa Association that requires that he prepares, reviews and approves the Master Development Budge and/or Master Assessments to ensure that the Viceroy Anguilla maintains the necessary "Hotel Standard", that the assessment schedule is correct and that all assessments are collected.

84.     Upon information and belief, the individual members of the Condo Association and Villa Association pay, in whole or part, the assessments directly to The Starwood Defendants' New York bank account(s).

85.     Upon information and belief, the Starwood Defendants and Defendant Shanholtz pursue a course of conduct that: (i) is insufficient to maintain the obligated "Hotel Standard"; (ii) denies Plaintiffs from obtaining information concerning the actual expenses incurred in the operation, maintenance and/or upkeep of the shared facilities at the Viceroy Anguilla for which the assessments are purportedly paid; and (iii) denies Plaintiff from obtaining information concerning the actual payment of the assessments by all condominium and/or villa owners who are members, respectively of the Condo Association and the Villas Association.

86.     As a result of the foregoing, Plaintiffs demand a full and immediate accounting directing the Starwood Defendants to produce for review the production of all books and records necessary to determine the actual expenses incurred in the operation, maintenance and/or upkeep of the shared facilities at the Viceroy Anguilla for which the assessments are purportedly paid; (ii) the actual payment of the assessments by all condominium and/or villa owners who are members, respectively of the Condo Association and the Villas Association; and (iii) adjudging the Starwood Defendants liable to Plaintiffs for the monies shown due from such accounting;

## PLAINTIFFS' FOURTH CAUSE OF ACTION AGAINST
## ROY SHANHOLTZ BREACH OF FIDUCIARY DUTY

87.     Plaintiffs repeats and realleges each and every allegation contained in paragraphs 1 through 86 as if fully set forth herein.

88.     Defendant, Roy Shanholtz at all relevant times has also been the principal of SOF 82 and SOF VIII; the vice-president of asset management and hotel operations for Starwood; and President of the Condo Association and the Villa Association.

21

89.     As a member of the Condo Association Board and Villa Association Board, Defendant Shanholtz owes fiduciary duties to the Condo Association and Villa Association.

90.     Defendant Shanholtz breached his fiduciary duties by failing to cause the Condominium Association and Villa Association to take the necessary steps to maintain the Viceroy Anguilla at the obligated "Hotel Standard."

91.     Upon information and belief, Defendant Shanholtz's breaches were made in bad faith and in order to financially benefit the Starwood Defendants to the detriment of the Plaintiffs and individual condominium unit owners and villa owners.

92.     As a result of the foregoing, Defendant Shanholtz is liable to the Plaintiff, derivatively, in an amount to be determined at trial.

## PLAINTIFFS' FIFTH CAUSE OF ACTION AGAINST
## THE STARWOOD DEFENDANTS FOR BREACH OF FIDUCIARY DUTY

93.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 92 as if fully set forth herein.

94.     The Starwood Defendants control the Condo Association and Villa Association as they own over eighty percent (80%) of the properties that constitute the respective associations. The Starwood Defendants prepare, review and approve the Master Development Budget of the Viceroy Anguilla.   The Starwood Defendants prepare, review and approve the Master Assessment Schedule, which is based off of the approved Master Development Budget.

95.     The Starwood Defendants control and dominate all aspects of the Condo Association and the Villas Association, which, respectively, owe a fiduciary duty to the members of Condo Association and Villa Association.   As such, the Starwood Defendants are obligated to prepare, review and approve the Master Development Budge and/or Master Assessments to ensure

that the Viceroy Anguilla maintains the necessary "Hotel Standard"; that the assessment schedule is correct; and that all assessments are collected.

96.     Upon information and belief, the individual members of the Condo Association and Villa Association pay, in whole or part, the assessments directly to the Starwood Defendants' New York bank account(s).

97.     Upon information and belief, the Starwood Defendants have violated their fiduciary duties to the Condo Association and the Villa Association by pursuing a course of conduct that: (i) is insufficient to maintain the obligated "Hotel Standard"; (ii) denies Plaintiffs from obtaining information concerning the actual expenses incurred in the operation, maintenance and/or upkeep of the shared facilities at the Viceroy Anguilla for which the assessments are purportedly paid; and (iii) denies Plaintiff from obtaining information concerning the actual payment of the assessments by all condominium and/or villa owners who are members, respectively of the Condo Association and the Villas Association.

98.     As a result of the foregoing, the Starwood Defendants are liable to the Plaintiffs, derivatively, in an amount to be determined at trial.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants, as follows:

i.      on the First Cause of Action against, individually and jointly, the Starwood Defendants awarding Plaintiffs' a sum to be determined at trial, but believed to be not less than $1,000,000, plus prejudgment interest;

ii.     on the Second Cause of Action against, individually and jointly, the Starwood Defendants, awarding Plaintiffs' a sum to be determined at trial, but believed to be not less than $1,000,000 plus prejudgment interest;

iii.     on the Third Cause of Action an order directing the Starwood Defendants to produce for review the production of all books and records necessary to determine the actual expenses incurred in the operation, maintenance and/or upkeep of the shared facilities at the Viceroy Anguilla for which the assessments are purportedly paid; (ii) the actual payment of the assessments by all condominium and/or villa owners who are members, respectively of the Condo Association and the Villas Association; and (iii) adjudging the Starwood Defendants liable to Plaintiffs for the monies shown due from such accounting;

iv.     on the Fourth Cause of Action against, individually and jointly, the Starwood Defendants awarding Plaintiffs' a sum to be determined at trial, but believed to be not less than $1,000,000 plus prejudgment interest;

v.     on the Fifth Cause of Action against, individually and jointly, the Starwood Defendants awarding Plaintiffs' a sum to be determined at trial, but believed to be not less than $1,000,000 plus prejudgment interest; and

vi.     on all causes of action, all attorneys' fees, costs and expenses as authorized by law, and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       April 27, 2016

                                        Respectfully submitted,

                                        **GUSRAE KAPLAN NUSBAUM PLLC**


                    By:     _____
                                        Ryan J. Whalen, Esq.
                                        Martin H. Kaplan, Esq.
                                        120 Wall Street, 25th Floor
                                        New York, New York 10005
                                        Tel: (212) 269-1400
                                        Fax: (212) 809-4147
                                        Email: rwhalen@gusraekaplan.com
                                        Email: mkaplan@gusraekaplan.com


                                        *Attorneys for Plaintiffs*